Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles H. Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Robert Gutman*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GUTMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FIBROGEN, INC. ENRIQUE CONTERNO, and JAMES SCHOENECK,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff Robert Gutman ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by FibroGen, Inc. ("FibroGen" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by FibroGen; and (c) review of other publicly available information concerning FibroGen.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired FibroGen securities between November 8, 2019 and April 6, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. FibroGen is a biopharmaceutical company that develops medicines for the treatment of anemia, fibrotic disease, and cancer. Its most advanced product is roxadustat, an oral small molecule inhibitor of hypoxia-inducible factor-prolyl hydroxylase ("HIF-PH") activity that acts by stimulating the body's natural pathway for red cell production. In December 2019, the Company filed its New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") for the approval of roxadustat for the treatment of anemia due to chronic kidney disease ("CKD").

3. On April 6, 2021, after the market closed, FibroGen issued a statement "provid[ing] clarification of certain prior disclosures of U.S. primary cardiovascular safety analyses from the roxadustat Phase 3 program for the treatment of anemia of chronic kidney disease ('CKD')." Specifically, the Company stated that the safety analyses "included post-hoc changes to the stratification factors." FibroGen further revealed that, based on analyses using the pre-specified stratification factors, the Company "cannot conclude that roxadustat reduces the risk of (or is superior to) MACE+ in dialysis, and MACE and MACE+ in incident dialysis compared to epoetin-alfa."

4.     On this news, the Company's share price fell $14.90, or 43%, to close at $19.74 per share on April 7, 2021, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that certain safety analyses submitted in connection with FibroGen's NDA for roxadustat included post-hoc changes to stratification factors; (2) that, based on analyses using the pre-specified stratification factors, the Company could not conclude that roxadustat reduces the risk of major adverse cardiovascular events compared to epoetin-alfa; (3) that, as a result, the Company faced significant uncertainty that its NDA for roxadustat as a treatment for anemia of CKD would be approved by the FDA; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Robert Gutman, as set forth in the accompanying certification, incorporated by reference herein, purchased FibroGen securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant FibroGen is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. FibroGen's common stock trades on the NASDAQ exchange under the symbol "FGEN."

13.     Defendant Enrique Conterno ("Conterno") has been the Company's Chief Executive Officer ("CEO") since January 3, 2020.

14.     Defendant James Schoeneck ("Schoeneck") served as interim CEO from August 2019 to January 3, 2020.

15.     Defendants Conterno and Schoeneck (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     FibroGen is a biopharmaceutical company that develops medicines for the treatment of anemia, fibrotic disease, and cancer. Its most advanced product is roxadustat, an oral small molecule inhibitor of hypoxia-inducible factor-prolyl hydroxylase ("HIF-PH") activity that acts by stimulating the body's natural pathway for red cell production. In December 2019, the Company filed its New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") for the approval of roxadustat for the treatment of anemia due to chronic kidney disease ("CKD").

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on November 8, 2019. On that day, FibroGen announced "Positive Phase 3 Pooled Roxadustat Safety and Efficacy Results" in a press release that stated, in relevant part:

> *Roxadustat cardiovascular safety comparable to placebo in non-dialysis dependent (NDD) patients, as assessed by Major Adverse Cardiovascular Events (MACE) and MACE+*
>
> *Roxadustat did not increase risk of MACE and reduced risk of MACE+ compared to epoetin alfa in dialysis-dependent (DD) patients;*
>
> *Roxadustat reduced risk of MACE by 30% and MACE+ by 34% compared to epoetin alfa in the incident dialysis (ID) patient subgroup of the DD population*
>
> *Roxadustat achieved primary efficacy endpoints in NDD and DD patients*
>
> WASHINGTON, D.C., November 08, 2019 (GLOBAL NEWSWIRE) – FibroGen, Inc. (NASDAQ:FGEN), today announced results from the pooled analyses of data from six global pivotal Phase 3 trials investigating roxadustat, a first-in-class, orally-administered inhibitor of hypoxia-inducible-factor (HIF) prolyl hydroxylase activity. The pooled analyses assessed the safety and efficacy of roxadustat as a treatment for anemia in chronic kidney disease (CKD) compared to placebo in Non-Dialysis-Dependent (NDD) patients and to standard of care epoetin alfa in Dialysis-Dependent (DD) patients, including the clinically important Incident Dialysis (ID) patient subgroup. These Phase 3 trials conducted by FibroGen and collaboration partners AstraZeneca and Astellas Pharma, Inc., enrolled over 8,000 CKD patients from more than 50 countries.
>
> "The pooled safety analyses assessing roxadustat as a treatment for anemia in chronic kidney disease demonstrate a cardiovascular safety profile comparable with placebo in patients not on dialysis, and comparable or in some cases better than that of epoetin alfa in patients on dialysis," said Robert Provenzano, MD, Associate Professor of Medicine, Wayne State University, Detroit, Michigan, U.S. and a primary investigator on the global Phase 3 program. "It is exciting to see this application of

the groundbreaking science on oxygen sensing and adaptation to hypoxia recently awarded the 2019 Nobel Prize in Physiology or Medicine, and championed by FibroGen's late founder and CEO, Tom Neff, who sadly passed away earlier this year. These positive safety results, coupled with roxadustat's well-defined efficacy in CKD patients, and its oral formulation, support the potential for roxadustat to become an important new treatment option for patients with anemia associated with CKD."

These late-breaking data were featured in the High-Impact Clinical Trials oral abstract session on Friday, November 8, at the American Society of Nephrology Kidney Week 2019 in Washington, D.C. (Presentation FR-OR131)

\*       \*       \*

Cardiovascular (CV) endpoints were defined as:

- Time to first Major Adverse Cardiovascular Event (MACE): a composite endpoint of all-cause mortality, myocardial infarction, stroke;

- Time to first MACE+, a composite endpoint which includes MACE plus unstable angina and heart failure requiring hospitalization; and

- Time to all-cause mortality

    o In the Non-Dialysis Dependent (NDD) patient population:

        ▪ Risks of MACE, MACE+, and all-cause mortality in roxadustat patients were comparable to placebo in the ITT analyses based on a reference non-inferiority margin of 1.3.

        [image omitted]

    o In a post hoc subgroup analysis of 2,438 non-dialysis patients with baseline eGFR≥15,

        ▪ The one-year decline in eGFR in roxadustat treated patients (-2.8) was significantly less than that in placebo treated patients (-4.4), with a treatment difference of 1.6 mL/min/1.73m2 (p<0.0001).

    o In the Dialysis Dependent (DD) patient population:

        ▪ Risks of MACE and all-cause mortality in roxadustat patients were not increased compared to those for patients receiving epoetin alfa based on a reference non-inferiority margin of 1.3.

        ▪ Risk of MACE+ was 14% lower in roxadustat-treated patients than in those receiving epoetin alfa.

        [image omitted]

        ▪ The Incident Dialysis (ID) patient sub-group of the Dialysis Dependent (DD) patient population:

- Risk of MACE was 30% lower in roxadustat patients than in epoetin alfa patients, and risk of MACE+ was 34% lower.

- Roxadustat-treated patients' risk showed a trend towards lower all-cause mortality relative to epoetin alfa-treated patients.

18.     On December 23, 2019, FibroGen announced that it had submitted its NDA for roxadustat to the FDA. In a press release, the Company stated, in relevant part:

FibroGen, Inc. (NASDAQ:FGEN), today announced the submission of a New Drug Application (NDA) to the U.S. Food and Drug Administration (FDA) for roxadustat for the treatment of anemia of chronic kidney disease (CKD), in both non-dialysis-dependent (NDD) and dialysis-dependent (DD) CKD patients.

Roxadustat is the first orally administered small molecule hypoxia-inducible factor prolyl hydroxylase (HIF-PH) inhibitor submitted for FDA regulatory approval for the treatment of anemia of CKD. Regulatory approval of roxadustat is supported by positive results from a global Phase 3 program encompassing 15 trials that enrolled more than 10,000 patients, worldwide.

"The submission of this NDA is a major step toward our goal of bringing this novel oral medicine to U.S. patients suffering from anemia in CKD," said Jim Schoeneck, Interim Chief Executive Officer, FibroGen. "We, in collaboration with our partner AstraZeneca, look forward to working with the FDA during the NDA review, and to the potential of roxadustat as a new therapeutic option for treating CKD anemia, in patients on dialysis and not on dialysis."

19.     On February 11, 2020, FibroGen announced that the FDA has completed its filing review of the NDA. In a press release, the Company stated:

FibroGen, Inc. (NASDAQ:FGEN) today announced that the U.S. Food and Drug Administration (FDA) has completed its filing review of its New Drug Application (NDA) for roxadustat for the treatment of anemia of chronic kidney disease (CKD), in both non-dialysis-dependent (NDD) and dialysis-dependent (DD) patients. The application will be considered filed on February 18, 2020. The FDA has set a Prescription Drug User Fee Act (PDUFA) date of December 20, 2020.

"The FDA's acceptance of the roxadustat new drug application is a critical step towards providing a new treatment option in the United States for chronic kidney disease patients suffering from anemia, a serious and often life-threatening disease," said Enrique Conterno, Chief Executive Officer, FibroGen.

"There is significant unmet medical need for patients with anemia of CKD, who have seen only limited advances in the last three decades," said Peony Yu, M.D., Chief Medical Officer, FibroGen. "We intend to work closely with the FDA, in collaboration with our partner, AstraZeneca, to make this novel oral therapy available as soon as possible."

The filing of the roxadustat NDA triggers a $50 million milestone payment from AstraZeneca (LSE/STO/NYSE: AZN) to FibroGen.

20.     On December 18, 2020, FibroGen issued a press release announcing that the FDA had extended the review period for the NDA by three months. Specifically, the Company stated:

> FibroGen, Inc. (Nasdaq: FGEN) today announced that the U.S. Food and Drug Administration (FDA) has extended the review period of the New Drug Application (NDA) for roxadustat for the treatment of anemia of chronic kidney disease (CKD) by three months. The updated Prescription Drug User Fee Act (PDUFA) action date is March 20, 2021.
>
> The FDA is close to finalizing its review of the NDA and FibroGen is submitting additional analyses of existing roxadustat clinical data, which require an extension of the original PDUFA date.
>
> "FibroGen is working closely with the FDA, in collaboration with our partner, AstraZeneca, to support the final review of the new drug application for roxadustat," said Enrique Conterno, Chief Executive Officer, FibroGen. "There is significant unmet medical need for the treatment of anemia of CKD, and we are committed to bringing roxadustat to patients in the U.S. as soon as possible.

21.     The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that certain safety analyses submitted in connection with FibroGen's NDA for roxadustat included post-hoc changes to stratification factors; (2) that, based on analyses using the pre-specified stratification factors, the Company could not conclude that roxadustat reduces the risk of major adverse cardiovascular events compared to epoetin-alfa; (3) that, as a result, the Company faced significant uncertainty that its NDA for roxadustat as a treatment for anemia of CKD would be approved by the FDA; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22.     On April 6, 2021, after the market closed, FibroGen issued a statement "provid[ing] clarification of certain prior disclosures of U.S. primary cardiovascular safety analyses from the roxadustat Phase 3 program for the treatment of anemia of chronic kidney disease ('CKD')." Specifically, the Company stated that the safety analyses "included post-hoc changes to the stratification factors." FibroGen further revealed that, based on analyses using the pre-specified stratification factors, the Company "cannot conclude that roxadustat reduces the risk of (or is

superior to) MACE+ in dialysis, and MACE and MACE+ in incident dialysis compared to epoetin-alfa." Specifically, in a press release, the Company stated, in relevant part:

> FibroGen, Inc. (Nasdaq: FGEN) (the "Company") today provided clarification of certain prior disclosures of U.S. primary cardiovascular safety analyses from the roxadustat Phase 3 program for the treatment of anemia of chronic kidney disease ("CKD").
>
> "As members of senior management were preparing for the upcoming FDA Advisory Committee meeting, we became aware that the primary cardiovascular safety analyses included post-hoc changes to the stratification factors," said Enrique Conterno, Chief Executive Officer, FibroGen. "While all of the analyses set forth below, including the differences in the stratification factors, were included in the NDA, we promptly decided to clarify this issue with the FDA and communicate with the scientific and investment communities."
>
> Mr. Conterno continued, "It is important to emphasize that this does not impact our conclusion regarding the comparability, with respect to cardiovascular safety, of roxadustat to epoetin-alfa in dialysis-dependent (DD) patients and to placebo in non-dialysis dependent (NDD) patients. We continue to have confidence in roxadustat's benefit risk profile."
>
> *     *     *
>
> The table below describes the cardiovascular safety results using the post-hoc stratification factors reported at the American Society of Nephrology conference in November 2019, as well as the analyses with the pre-specified stratification factors which have not been previously publicly reported.

| | Analyses with post-hoc stratification factors | Analyses with pre-specified stratification factors |
|---|---|---|
| | HR (95% Confidence Interval) | HR (95% Confidence Interval) |
| **Non Dialysis** (OLYMPUS, ANDES, ALPS  N=4,270); ITT | | |
| MACE | 1.08 (0.94, 1.24) | 1.10 (0.96, 1.27) |
| MACE+ | 1.04 (0.91, 1.18) | 1.07 (0.94, 1.21) |
| ACM | 1.06 (0.91, 1.23) | 1.08 (0.93, 1.26) |
| **Dialysis Dependent** (HIMALAYAS, SIERRAS, ROCKIES  N=3,880); OT-7 | | |
| MACE | 0.96 (0.82, 1.13) | 1.02 (0.88, 1.20) |
| MACE+ | 0.86 (0.74, 0.98) | 0.91 (0.80, 1.05) |
| ACM | 0.96 (0.79, 1.17) | 1.02 (0.84, 1.23) |
| **Incident Dialysis** (N=1,526); OT-7 | | |
| MACE | 0.70 (0.51, 0.96) | 0.82 (0.60, 1.11) |
| MACE+ | 0.66 (0.50, 0.89) | 0.78 (0.59, 1.02) |
| ACM | 0.76 (0.52, 1.11) | 0.82 (0.57, 1.18) |

> As reflected in the table, the analyses with the pre-specified stratification factors result in higher hazard ratios (point estimates of relative risk) and 95% confidence intervals. For MACE+ in dialysis and for MACE and MACE+ in incident dialysis, the 95% confidence intervals include 1.0. ***While these hazard ratios remain below 1.0, based on these analyses we cannot conclude that roxadustat reduces the risk of (or is superior to) MACE+ in dialysis, and MACE and MACE+ in incident dialysis compared to epoetin-alfa.***

23.     On this news, the Company's share price fell $14.90, or 43%, to close at $19.74 per share on April 7, 2021, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired FibroGen securities between November 8, 2019 and April 6, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, FibroGen's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of FibroGen shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by FibroGen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

1    (a) whether the federal securities laws were violated by Defendants' acts as

2 alleged herein;

3    (b) whether statements made by Defendants to the investing public during the

4 Class Period omitted and/or misrepresented material facts about the business, operations, and

5 prospects of FibroGen; and

6    (c) to what extent the members of the Class have sustained damages and the

7 proper measure of damages.

8   29. A class action is superior to all other available methods for the fair and efficient

9 adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

10 damages suffered by individual Class members may be relatively small, the expense and burden of

11 individual litigation makes it impossible for members of the Class to individually redress the wrongs

12 done to them.  There will be no difficulty in the management of this action as a class action.

13           **UNDISCLOSED ADVERSE FACTS**

14   30. The market for FibroGen's securities was open, well-developed and efficient at all

15 relevant times.  As a result of these materially false and/or misleading statements, and/or failures to

16 disclose, FibroGen's securities traded at artificially inflated prices during the Class Period.  Plaintiff

17 and other members of the Class purchased or otherwise acquired FibroGen's securities relying upon

18 the integrity of the market price of the Company's securities and market information relating to

19 FibroGen, and have been damaged thereby.

20   31. During the Class Period, Defendants materially misled the investing public, thereby

21 inflating the price of FibroGen's securities, by publicly issuing false and/or misleading statements

22 and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth

23 herein, not false and/or misleading.  The statements and omissions were materially false and/or

24 misleading because they failed to disclose material adverse information and/or misrepresented the

25 truth about FibroGen's business, operations, and prospects as alleged herein.

26   32. At all relevant times, the material misrepresentations and omissions particularized in

27 this Complaint directly or proximately caused or were a substantial contributing cause of the

28 damages sustained by Plaintiff and other members of the Class.  As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about FibroGen's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34. During the Class Period, Plaintiff and the Class purchased FibroGen's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding FibroGen, their control over, and/or receipt and/or modification of FibroGen's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning FibroGen, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

36.    The market for FibroGen's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, FibroGen's securities traded at artificially inflated prices during the Class Period.  On February 12, 2021, the Company's share price closed at a Class Period high of $55.72 per share. Paintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of FibroGen's securities and market information relating to FibroGen, and have been damaged thereby.

37.    During the Class Period, the artificial inflation of FibroGen's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about FibroGen's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of FibroGen and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.    At all relevant times, the market for FibroGen's securities was an efficient market for the following reasons, among others:

(a)    FibroGen shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, FibroGen filed periodic public reports with the SEC and/or the NASDAQ;

(c)    FibroGen regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)   FibroGen was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

39.   As a result of the foregoing, the market for FibroGen's securities promptly digested current information regarding FibroGen from all publicly available sources and reflected such information in FibroGen's share price. Under these circumstances, all purchasers of FibroGen's securities during the Class Period suffered similar injury through their purchase of FibroGen's securities at artificially inflated prices and a presumption of reliance applies.

40.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

41.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to

differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of FibroGen who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase FibroGen's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for FibroGen's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about FibroGen's financial well-being and prospects, as specified herein.

46.   Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of FibroGen's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about FibroGen and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.   Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing FibroGen's financial well-being and prospects from the investing public

and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of FibroGen's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired FibroGen's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that FibroGen was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their FibroGen securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

53.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.    Individual Defendants acted as controlling persons of FibroGen within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.    As set forth above, FibroGen and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

1  **PRAYER FOR RELIEF**

2       WHEREFORE, Plaintiff prays for relief and judgment, as follows:

3       (a)    Determining that this action is a proper class action under Rule 23 of the Federal

4  Rules of Civil Procedure;

5       (b)    Awarding compensatory damages in favor of Plaintiff and the other Class members

6  against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

7  wrongdoing, in an amount to be proven at trial, including interest thereon;

8       (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

9  action, including counsel fees and expert fees; and

10       (d)    Such other and further relief as the Court may deem just and proper.

11  **JURY TRIAL DEMANDED**

12       Plaintiff hereby demands a trial by jury.

13  DATED:  April 15, 2021          **GLANCY PRONGAY & MURRAY LLP**

14                  By:   */s/ Pavithra Rajesh*

15                  Robert V. Prongay
                  Charles H. Linehan

16                  Pavithra Rajesh
                  1925 Century Park East, Suite 2100

17                  Los Angeles, California 90067
                  Telephone:  (310) 201-9150

18                  Facsimile:  (310) 201-9160
                  Email:  info@glancylaw.com

19  

20                  *Attorneys for Plaintiff Robert Gutman*

21  

22  

23  

24  

25  

26  

27  

28

**SWORN CERTIFICATION OF PLAINTIFF**

**FibroGen, Inc. (FGEN) SECURITIES LITIGATION**

I, Robert Gutman, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the FibroGen, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in FibroGen, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

4/9/2021

_____

Date

DocuSigned by:

*Robert Gutman*

ACD1AE2BDCAC46D...

_____

Robert Gutman

**Robert Gutman's Transactions in FibroGen, Inc. (FGEN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 11/15/2019 | Bought | 200 | $36.9996 |
| 3/16/2021 | Bought | 150 | $33.5830 |